**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 19-CR-100 (BAH)** |
| | ) | |
| **NIMROD SHALOM,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ————————————————————— | ) | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing in the above-referenced case.

On September 29, 2022, Nimrod Shalom pled guilty to one count of Transmission of a Sexual Performance by a Minor, in violation of 22 D.C. § 3102(b), pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The parties have agreed to a sentence of 84 months of incarceration, followed by a term of supervised release of three years to life. For the reasons set forth below, the government requests that the Court accept the plea offer and sentence the defendant to 84 months of incarceration, followed by lifetime supervised release.

## FACTUAL AND PROCEDURAL BACKGROUND

As described in the Statement of Offense (ECF 41), on August 1, 2016, the defendant contacted an undercover law enforcement officer (UC) through the KIK messaging application. The defendant asked the UC whether the UC had a child, the child's age, and whether the UC "played" sexually with the child. In response, the UC stated that he had a nine-year-old daughter and that he was sexually active with the child. The defendant stated that he was sexually active with his own four-year-old daughter and sent the UC an image of a child who appeared to be

approximately four years old. The child was positioned on her hands and knees on a bed, wearing black stockings, and with her mouth partially open.

The defendant continued to discuss his sexual interest in children with the UC over KIK throughout the day. He informed the UC that he was "not in the US" and that where he lived, "no one cares what you do." The defendant asked the UC for additional images of the UC's purported nine-year-old daughter, including photos of her "spread" and "fully naked." The defendant requested that the UC message him when the UC's daughter arrived so that they could have "some fun…" In addition, the defendant sent the UC additional photos of the child he claimed was his four-year-old daughter, including the following images:

- An image that depicts the child sprawled on a bed with her arms by her head and her legs spread apart. The child is wearing only black garter stockings and the way the child is positioned and the way the camera is focused, her genitals appear to be the focal point of the image.
- Two images that show the child lying on her stomach, while an adult's hand spreads apart her buttocks, exposing her anus and genitals.

The UC was in the District of Columbia when the defendant transmitted these images to him.

On August 2, 2016, the defendant was detained by the Israeli National Police (INP) in relation to this offense. INP determined that the defendant did not have a four-year-old daughter and that the images that he had transmitted to the UC were believed to have been commercially produced. During an interview with INP, the defendant admitted to using the KIK application and pretending to be a father with access to a child, in order to persuade individuals to send him child sexual abuse material. He further admitted to sending child pornography over KIK on the day prior to his arrest. INP performed a forensic analysis on the defendant's iPhone and discovered 23

images depicting the sexual abuse of children, including the images that the defendant had sent to the UC. The analysis also revealed that the defendant had deleted the KIK application while INP officers were knocking on his door.

On August 16, 2016, the government learned that the defendant had purchased a plane ticket to the United States. The government obtained a federal arrest warrant from the U.S. District Court for the District of Columbia in connection with a Criminal Complaint charging the defendant with one count of Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2). However, the defendant did not board the flight, and the warrant remained unexecuted. *See* PSR ¶ 21.

In December 2017, Israel informed the United States that it would not pursue charges against the defendant. PSR ¶ 23. On March 14, 2019, the United States indicted the defendant on one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of Production of Sexually Explicit Depictions of a Minor for Importation Into the United States, in violation of 18 U.S.C. § 2260(b), and sought the defendant's extradition from Israel. *Id.* ¶ 24. On July 22, 2021, however, the defendant voluntarily returned to the United States. *Id.* ¶ 26. He was arrested on the 2016 federal arrest warrant when he landed in Los Angeles, California, on July 23, 2021. *Id.*

## DISCUSSION AND RECOMMENDATION

### I.   Legal Principles

#### A.   *Statutory Penalties*

Transmission of a Sexual Performance by a Minor, in violation of 22 D.C. § 3102(b), carries a maximum sentence of 10 years of imprisonment, 8 years of which can be imposed at

sentencing; a fine of $25,000; and a term of supervised release of 3 years to life. *See* 22 D.C. § 3103(1); 24 D.C. § 24-403.01(b-1); 22 D.C. § 3571.01(a)(7); 22 D.C. § 24-403.01(b)(2)(B).

       B.     *D.C. Voluntary Sentencing Guidelines*

The defendant's applicable sentence under the D.C. Voluntary Sentencing Guidelines for the offense of Transmission of a Sexual Performance by a Minor is 10—28 months, with prison, probation, or a short-split sentence available. As the name implies, the D.C. Voluntary Sentencing Guidelines are not binding, and a court may impose any sentence that does not exceed the statutory maximum penalty of ten years (eight years imposed). *See* 3 D.C. § 105.

       C.     *18 U.S.C. § 3553(a)*

Finally, in determining the appropriate sentence, the Court should consider the applicable factors set forth in 18 U.S.C. § 3553(a). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

**II.**    **<u>Government's Sentencing Recommendation</u>**

       A.     *There Is a Reasonable Basis for the Parties' Rule 11(c)(1)(C) Agreement.*

The government requests that the Court accept the Rule 11(c)(1)(C) plea agreement and sentence the defendant to 84 months of incarceration, followed by lifetime supervised release. As

discussed below, this sentence 1) reflects the applicable sentencing factors under 18 U.S.C.

§ 3553(a); and 2) falls within what would be the defendant's federal Sentencing Guidelines range

for the corresponding federal offense of Distribution of Child Pornography (Count One of the

Indictment).[1] In addition, the government recognizes the significant – and potentially complex –

diplomacy and international legal process necessary to try a case with foreign witnesses and

evidence, which has already been reflected to some degree in the prior litigation in this case. The

Rule 11(c)(1)(C) plea resolves this concern, while nonetheless ensuring that the defendant receives

a substantial sentence that is commensurate with both the severity of his offense and the federal

Sentencing Guidelines. As a result, the government respectfully respects that the Court accept the

Rule 11(c)(1)(C) plea agreement.

      B.      *The Factors Set Forth in 18 U.S.C. § 3553(a) Support a Sentence of 84 Months' Incarceration and Lifetime Supervised Release.*

### Nature and Circumstances of the Offense

The defendant's conduct was extremely serious. His offense was perpetrated against the

most vulnerable members of society – children. The children captured in the images and videos

possessed and shared by the defendant were traumatized and victimized in the worst way

imaginable at the time the images were created, and they are re-victimized and re-traumatized each

and every time an individual, like the defendant, views or shares the images for his own sexual

gratification. As the U.S. Supreme Court noted in *New York v. Ferber*:

> [P]ornography poses an even greater threat to the child victim than
> does sexual abuse or prostitution. Because the child's actions are
> reduced to a recording, the pornography may haunt him in future

---

[1] In the defendant's case, a conviction for Distribution of Child Pornography carries a mandatory minimum sentence of 15 years – above the defendant's Guidelines range – because of the defendant's prior California conviction for possession of child pornography. *See* 18 U.S.C. §2252(b)(1).

> years, long after the original misdeed took place. A child who has
> posed for a camera must go through life knowing that the recording
> is circulating within the mass distribution system for child
> pornography.

458 U.S. 747, 759 n.10 (1982), *quoting* Shouvlin, *Preventing the Sexual Exploitation of Children:*

*A Model Act*, 17 Wake Forest L.Rev. 535, 545 (1981).

The defendant's conduct, however, goes beyond merely trafficking in anonymous child sexual abuse material. He directly encouraged a man whom he believed had access to a nine-year-old girl to send him sexually explicit photos of that child and, even more egregiously, he attempted to actively participate in the child's further sexual exploitation, referring to sexually abusing her as "fun." This was not a fantasy. He believed that this was a real nine-year-old girl, and his willingness to use her to satisfy his sexual urges shows a level of depravity and callousness that is appalling. Given the serious nature of the defendant's offense conduct, a significant period of incarceration is warranted.

### History and Characteristics of the Defendant

There are no significant mitigating factors in the defendant's background that would explain his behavior or call for a sentence less severe than that requested by the parties. As outlined in the PSR, the defendant has had every advantage given to him, and faced very little hardship in his life. Despite the privileges afforded him, however, the defendant has a history of criminal, exploitative behavior.

As referenced above, the defendant has a prior California state court conviction for Possession of Child Pornography from May 2015. A review of the records relating to that conviction, however, shows that the circumstances underlying his prior offense are much more alarming than the statute of conviction alone might suggest. According to the California police

reports, the defendant's girlfriend reported to law enforcement that the defendant had initiated her into the practice of "open family" relationships, sexually abused her two-year-old daughter, and solicited photographs of her daughter's vagina. During the investigation, law enforcement also spoke with a prior girlfriend of the defendant, who had a seven-year-daughter. This woman reported that when she dated the defendant, he requested nude photographs of her daughter and suggested that they engage in both "family nudism" and sexual activities with the child. Moreover, a search of the defendant's devices revealed 476 images and 37 videos of child sexual abuse material; even more concerning, law enforcement recovered publications which instruct men on how to sexually abuse children and avoid detection by law enforcement, including titles such as "How to Practice Child Love" and "The Pedophile's Handbook." Among other "tips" for pedophiles, the documents urge men to target single mothers, stating, for example:

> Another happy news for us paedophiles is that the usual guy
> does not really like single moms with a lot of kids running
> around. So these moms are usually suffering from the lack
> of men, love, and self-confidence. Some are even desperate
> for a man and a father to their children – not to mention
> economical problems […]

In sum, the information from California strongly suggests that the defendant not only possessed child pornography but, at minimum, purposefully targeted single mothers with young daughters in the hopes of sexually exploiting the children. His conduct is both extremely dangerous and wholly despicable.

Nor does it appear that the defendant learned anything from his previous conviction, or that it prompted him to change his behavior. After being sentenced to only one day of incarceration in California (with credit for one day served), followed by five years of probation – and ordered to

complete a sex offender counseling program – the defendant nonetheless committed the present crime less than one-and-a-half years later. Moreover, the defendant was communicating with a *second* undercover law enforcement officer based in Maine at the same time as he was messaging the UC in the District of Columbia, and distributing the same images of child pornography to the Maine officer as he did the UC.

In sum, the defendant disregarded the leniency afforded him after his initial conviction in 2015 and quickly re-engaged in similar offense conduct. Not only does such behavior indicate that a substantial period of incarceration is now warranted, but it also demonstrates that lifetime supervised release is required to both monitor the defendant and deter further re-offending.

**Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense**

Child pornography offenses are extremely serious because they result in perpetual harm to the most vulnerable victims, while simultaneously validating and normalizing the sexual exploitation of children. Courts across the country have recognized this:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.

> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of the defendants, sorry that their actions were discovered by law enforcement.

8

*United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723

(6th Cir. 2012).[2] Indeed, Congress has similarly described the evil of child pornography:

> [W]here children are used in its production, child pornography permanently records
> the victim's abuse, and its continued existence causes the child victims of sexual
> abuse continuing harm by haunting those children in future years . . . [The]
> existence of and traffic in child pornographic images creates the potential for many
> types of harm in the community and presents a clear and present danger to all
> children . . . it inflames the desires of . . . pedophiles . . . who prey on children,
> thereby increasing the creation of and distribution of child pornography and the
> sexual abuse and exploitation of actual children who are victimized as a result of
> the existence and use of these materials.

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27

(1996).

There is perhaps no greater invasion of privacy than that caused by the dissemination of

child pornography. With a click of the button on a camera, the sexual abuse of these children is

memorialized forever. It is terrible enough that a child must live with the memory of his or her

initial abuse. However, the child must then cope with the fact that strangers everywhere are using

the worst moments of that child's life to sexually gratify themselves, and that he or she can do

nothing to stop them from continuing to do so. This is not some sort of abstract speculation; the

mother of one of the victims <u>in this case</u> describes, for example, how a "shadow" comes over her

daughter's face whenever a stranger gives her an unexpected compliment, and how her daughter

---

[2] *See also In re Amy Unknown*, 636 F.3d 190, 201 n.12 (5th Cir. 2011) (*citing United States v. Norris*, 159
F.3d 926 (5th Cir. 1998) (describing how the distribution of child pornography creates a marketplace for
images of children, perpetuating abuse); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005);
*United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

is now beginning to grasp "how many people saw the [] pictures as something to enjoy rather than abhor." Govt. Exh. A (Victim Impact Statement of "Jan_Feb" Mother).

Consumers of child pornography, like the defendant, create a market and demand for materials depicting the sexual abuse and exploitation of real children. They contribute to the cycle of abuse and are in part responsible for the harm suffered by the children used to produce the materials in their collections. *See United States v. Goff,* 501 F.3d 250, 259-260 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). In *United States v. Goldberg,* the Seventh Circuit stated:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. [Citations omitted].

491 F.3d 668, 672 (7th Cir. 2007). In other words, even if consumers of child pornography do not themselves molest children, their actions directly contribute to the abuse of children.

Here, the defendant made the conscious decision to possess and share images of children being exploited and raped – and he did so on multiple occasions. Furthermore, he was willing to sexually exploit what he believed to be a nine-year-old girl. A significant period of incarceration is necessary to promote respect for the law, ensure just punishment, and to reflect the seriousness of the defendant's offenses.

### D.       Adequate Deterrence and Protection of the Public

The possession, receipt, and distribution of child pornography endangers the public by encouraging the rape, violence, and abuse of children. In *United States v. Miller*, the Fifth Circuit stated:

> [R]eal children are being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way.  If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today.

665 F.3d 114, 123 (5th Cir. 2011). The importance of deterrence with respect to child pornography offenses is well-established. Serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the need for its production:

> The greater the customer demand for child pornography, the more that will be produced.  Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

*Goldberg*, 491 F.3d at 672; *see also Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *Goff*, 501 F.3d at 261 ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare

11

of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

Here, the defendant's sentence should be sufficient to deter not only the defendant from reoffending in the future (which is especially important given that this is his second conviction for an offense related to child pornography), but also to deter the criminal conduct of others who engage in, or contemplate engaging in, the trafficking of child sexual abuse material. This objective is particularly relevant in the present case, given the defendant's statement to the UC that where he lives "no one cares what you do." As stated in *Goldberg*, "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for trafficking in child pornography, the greater the customer demand for it and so the more will be produced." 491 F.3d at 672. *See also Goff*, 501 F.3d at 261 (stating in a child pornography possession case that "deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing"). Here, the government's recommended sentence of 84 months' incarceration adequately serves this purpose. Moreover, the imposition of a lifetime period of supervised release ensures that the defendant will continue to be monitored while he is in the community, which serves to protect the public from future harm.

### Kinds of Sentences Available, the Sentencing Guidelines, and the Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires courts to consider the need to avoid unwarranted sentencing disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities

between [ ] defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). Here, although the defendant has pled guilty to a D.C. Code charge, the parties' agreed-upon sentence falls squarely within what would be the defendant's federal Sentencing Guidelines for the corresponding federal offense, Distribution of Child Pornography, upon which he was originally indicted.[3] Thus, despite the D.C. statute of conviction, the parties' proposed sentence is comparable to what other federal court defendants who engage in similar conduct have faced.

Moreover, according to the U.S. Sentencing Commission's Interactive Data Analyzer, the average term of incarceration for individuals sentenced pursuant to U.S.S.G. § 2G2.2 (the applicable Guidelines section for Distribution of Child Pornography) with a Criminal History Category of II (the defendant's category level) in Fiscal Year 2021 was 131 months of incarceration. Approximately 59.8% of individuals with this Guidelines profile were sentenced to a period of incarceration of 120 months or more; 31.4% of individuals were sentenced to a period of incarceration of between 60—119 months; and 8.9% were sentenced to a period of incarceration below 60 months of incarceration. While the Analyzer does not account for specific enhancements nor an individual's final offense level, it is clear that the parties agreed-upon sentence of 84 months' incarceration falls within the 31.4% of individuals sentenced between 60-119 months' incarceration. As such, this sentence does not create an unwarranted disparity, particularly given the relatively few images that the defendant possessed compared to the vast majority of individuals

---

[3] The PSR calculates the defendant's federal Guidelines range for Distribution of Child Pornography at 78—97 months' incarceration. *See* PSR ¶ 80.

sentenced under § 2G2.2, which would have consequently resulted in a lesser enhancement under § 2G2.2(b)(7) and thus a lower offense level.

## CONCLUSION[4]

For the foregoing reasons, the government respectfully recommends that the Court accept the plea agreement in this case and sentence the defendant to a term of incarceration of 84 months, followed by a lifetime term of supervised release.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

_/s/ Caroline Burrell_
Caroline Burrell
CA Bar No. 283687
Assistant United States Attorney
601 D. St N.W.
Washington, D.C. 20530
(202) 252-6950
 caroline.burrell@usdoj.gov

---

[4] The government notes that it has communicated with the attorneys for the identified victims and there are no restitution requests.

14

**CERTIFICATE OF SERVICE**

I hereby certify that the government's opposition was duly served upon the defense counsel by electronic means via the Court's ECF system.

This 6th day of January, 2023.

_/s/ Caroline Burrell_
AUSA Caroline Burrell